EDWARD F. WESTFIELD, ESQ . (ATTORNEY BAR CODE EW2030)
**Hyderally & Associates, P.C.**
6218 RIVERDALE AVENUE
RIVERDALE, NY 10471
T: (718) 601-1100
F: (212) 601-1200
E: EFW@EFWPC.COM

-AND-

**Hyderally & Associates, P.C.**
TY HYDERALLY, ESQ. (NJSBA 85013)
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
E: TYH@EMPLOYMENTLIT.COM

Attorneys for Plaintiff: Lazar Eydelman

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LAZAR EYDELMAN,** | **CIVIL ACTION No:** |
| **PLAINTIFF,** | **(          )** |
| **VS.** | |
| | **COMPLAINT AND JURY DEMAND** |
| **CBRE GWS LLC, a Delaware limited liability company, CBRE, INC., a Delaware corporation, JOHN DOES 1-10, AND XYZ CORP. 1-10** | |
| **DEFENDANTS.** | |

Plaintiff, Lazar Eydelman (hereinafter, "Eydelman" or "Plaintiff"), who resides at 5955

47th Ave. Apt. 7B, Woodside, NY 11377, herein brings federal claims against Defendants CBRE

GWS, LLC, a Delaware limited liability company, and CBRE, INC., a Delaware corporation

(hereinafter collectively "CBRE" or "Defendants"), for violation of: (1) The Americans with

Disabilities Act of 1990, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* ("ADA"), (disability discrimination); (2) the ADA (failure to accommodate); (3) the ADA (failure to engage in the interactive process); (4) the ADA (retaliation); (5) the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Interference); and (6) the FMLA (retaliation).

Plaintiff herein also asserts the Court's supplemental jurisdiction over his claims for legal and equitable relief for a violation of: (7) the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law § 290 *et seq.* and N.Y.C. Admin. Code § 8-101 *et seq.* (collectively, "NYHRL") (disability discrimination/harassment); and (8) the NYHRL (retaliation).

## II. JURISDICTION AND VENUE

1. Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as plaintiff's Complaint asserts claims under 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § 2601 *et seq.* Supplemental jurisdiction is asserted over plaintiff's state law claims under 28 U.S.C. § 1367.

2. Venue is appropriate in this District in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in the Southern District of New York, and the defendants in this matter are the entities or organizations doing business in and authorized to do business in the State of New York and employee residents who are New York residents acting in their individual and official capacities under color of New York law.

3. On or about November 20, 2017, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit "1").

4. On December 22, 2017, the EEOC issued a right to sue notice to Plaintiff. (Exhibit "2").

2

5. Thus, Plaintiff has complied with all procedural prerequisites of the laws under which this case is brought.

## III. PARTIES

6. Eydelman was the Senior Finance Manager for Defendants from on or about September 2015 until his retaliatory termination on July 20, 2017.

7. Throughout his employment, Eydelman worked out of Defendants' offices in Bellevue Hospital, located at 462 1st Avenue, New York, New York 10016, and occasionally out of his home in Woodside, New York.

8. Defendant CBRE GWS, LLC, formerly known as Johnson Controls GWS LLC, is a Delaware limited liability company authorized to do business and doing business in the State of New York, maintaining offices located at 140 Broadway, New York, NY 10005.

9. Defendant CBRE, Inc. is a Delaware corporation authorized to do business and doing business in the State of New York, maintaining offices located at 140 Broadway, New York, NY 10005.

10. In or about September 2015, Johnson Controls GWS LLC was sold to defendant CBRE, Inc. and the name of the limited liability company was changed to "CBRE GWS LLC."

11. After the sale and name change, Eydelman continued to work for CBRE GWS LLC and also for CBRE, Inc. as Senior Finance Manager.

12. Thus, CBRE and CBRE GWS LLC (hereinafter collectively referred to as "CBRE" or "Defendants") were "employers" of Plaintiff under the statutes alleged above.

13. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of

3

conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

14. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

15. Thus, all Defendants are subject to suit under the statutes alleged above.

16. At all times referred to in this Complaint, employees of the corporate Defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate Defendants ratified, embraced and added to their conduct.


## FACTUAL BACKGROUND

17. In or about June 2012, Eydelman began working for Johnson Controls, Inc. as a Senior Finance Manager.

18. In that capacity, Eydelman was responsible for preparing invoices and financial reports, performing budget and forecast analysis for each client, assisting the account director with any financial query, and discussing any financial issues with clients and corporate representatives related to billing, invoicing, etc.

19. In about January 2015, Eydelman began working for Johnson Controls GWS LLC, a subsidiary of Johnson Controls, Inc.

20. In about September 2015, Johnson Controls GWS LLC was sold to Defendant CBRE, Inc., and the name was changed to CBRE GWS LLC.

21. After the sale and name change, Eydelman continued to work for CBRE GWS LLC and also for CBRE, Inc. as Senior Finance Manager.

22. Throughout his employment with Defendants, Eydelman performed his work duties in an exemplary manner.

23. During November 2015, Defendants informed Eydelman that Defendants were going to terminate his employment in September 2016 unless he accepted a new position for less money.

24. This position was based in Chicago, Illinois and required Eydelman to fly to Chicago on Monday morning and return to New York Friday night.

25. Because he did not want to lose his job, Eydelman accepted the position.

26. Defendants' actions caused Eydelman severe emotional distress and anxiety, manifesting in physical symptoms, such as panic attacks, chest pain, and high blood pressure.

27. Eydelman's physical and mental condition continued to deteriorate at an exponential rate.

28. As a result, Eydelman was hospitalized from December 13, 2016 to December 14, 2016 and from December 26, 2016 to December 28, 2016 at Northwell Health, in Long Island, New York.

29. Eydelman discussed his hospitalizations and medical condition with his direct supervisor, Gary Panek ("Panek"), Regional Finance Director, Charles Thorndike ("Thorndike"), Alliance Director, and Quentin Marvin, Human Resources Manager.

5

30. When Plaintiff returned to work, Defendants' engaged in retaliatory practices.

31. For example, Defendants failed to provide adequate support staff to Eydelman.

32. Further, Defendants removed from Eydelman's responsibility significant high level job duties.

33. Due to Defendants' retaliatory practices, Eydelman suffered additional chest pains that required additional medical treatment on March 2, 2017.

34. Eydelman discussed his medical condition with Panek, Thorndike, and Julie Smith ("Smith"), Senior Human Resources Manager.

35. On March 10, 2017, Defendants then advised Eydelman of issues with his performance and presented him a write up of fabricated performance issues.

36. Eydelman took issue with the retaliatory write up in a detailed conversation with Panek that Eydelman later reduced to a word document that he sent to Panek on July 17, 2017.

37. Panek admitted that the write up was created by Smith.  However, Panek refused to withdraw the retaliatory write up.

38. On April 16, 2017, Eydelman received treatment from Rozalia Borohov, RPA-C ("Borohov") from the Centers Urgent Care for a medical condition/disability.

39. Due to Eydelman's medical condition/disability, Borohov restricted him from prolonged sitting and standing and no flying and restricted him from returning to work until April 24, 2017.

40. Eydelman shared his restrictions with Panek, Thorndike, and Renee Solano ("Solano"), Human Resources Manager, and provided Defendants with a medical note for same from Borohov.

6

41. On April 21, 2017, Eydelman went to a psychiatrist, Ludmila Davidov, M.D. ("Dr. Davidov"), of the Queens Consultation Center, LLC, to discuss his mental health problems.

42. Dr. Davidov diagnosed Eydelman with severe anxiety, depression, and multiple somatic problems, extended his medical leave to May 19, 2017 and continued the restriction of no flying. Eydelman shared this medical note and information about his disability and requested accommodations with Panek, Thorndike, and Solano.

43. Eydelman's psychiatrist applied for Eydelman's disability and submitted paperwork to CIGNA Group Insurance on May 8, 2017.

44. On May 16, 2017, Dr. Davidov diagnosed Eydelman with panic disorder, Major Depressive Disorder, and cognitive disturbances and extended his medical leave to June 18, 2017. Eydelman shared this medical note and information about his disability and requested accommodations with Panek, Thorndike, and Solano.

45. On June 19, 2017, Dr. Davidov extended Eydelman's medical leave to July 1, 2017. Eydelman shared this medical note and information about his disability and requested accommodations with Panek, Thorndike, and Solano.

46. On July 2, 2017, Eydelman told Panek that he was cleared to return to work on Monday, July 3, 2017.

47. Though Panek did not respond to Eydelman's email, Eydelman began working on July 3, 2017 as scheduled.

48. That same day, Eydelman attempted to schedule a meeting with Panek and Steven Cassidy, Senior Finance Director, for July 5, 2017 in order to discuss his work assignments.

49. Panek declined the invitation on Defendants' email and calendar system without replying to Eydelman's email. Instead, Solano reached out to Eydelman and informed him that she discussed Eydelman's return to work note with the company's legal department and was advised that Eydelman could not return to work until he got a more detailed return to work note from Dr. Davidov.

50. On July 5, 2017, CIGNA created documentation noting that Eydelman's leave was treated as approved FMLA and approved Short Term Disability leaves from April 17, 2017 to July 9, 2017. On July 6, 2017, Dr. Davidov confirmed that Eydelman could return to work on July 17, 2017 and specified the duration of the restrictions.

51. Eydelman sent a copy of Dr. Davidov's letter to Solano on July 7, 2017.

52. Eydelman returned to work on July 17, 2017 and provided a copy of the return to work note with restrictions to Defendants.

53. On July 17, 2017, Eydelman sent an email to Solano requesting to meet to get up to speed on his role going forward and to discuss his accommodation requests.

54. Solano then told Eydelman not to reach out to anyone at the company.

55. Solano then scheduled a telephonic meeting with herself, Panek and Eydelman on July 19, 2017 to discuss Eydelman's alleged performance issues.

56. Before the meeting, Eydelman sent his response to Defendants' retaliatory Warning Letter to Solano and Panek.

57. Solano and Panek ignored Eydelman's response.

58. Instead, Solano advised Eydelman that he had performance issues and that the company thought it best to terminate his employment and offer him a "generous" severance package of 20 weeks.

59. Eydelman noted that he wanted to continue his employment.

60. Panek dissuaded Eydelman from this possibility and shared potentially negative consequences of Eydelman continuing his employment with CBRE.

61. Eydelman then sent an email memorializing the meeting.

62. Subsequently, Solano scheduled a second telephonic meeting with herself, Panek and Eydelman.

63. During this phone call, Defendants were even more aggressive in pushing the termination of Eydelman's employment.

64. Solano reiterated that the severance of five (5) months was extremely generous and strongly suggested that Eydelman accept the offered severance.

65. Eydelman queried what would happen if he did not accept the severance agreement, which required him to waive his ability to pursue a claim for wrongful termination, disability discrimination, and FMLA violations.

66. Solano stated that if Eydelman did not accept the offer, he would be written up and terminated.

67. Solano then stated that Eydelman had to accept the severance as this was the only option on the table.

68. Thus, rather than accommodate Eydelman's disability and/or engage in the interactive process, Defendants pursued their desire to retaliate against Eydelman for his protected activity of taking a disability leave and seeking an accommodation

69. Panek then stated that Eydelman's email and log in access was shut down, effective immediately.

70. Solano further stated that Eydelman was to return the company phone and computer and

9

also advised that termination documentation and a copy of the severance agreement would be sent to Eydelman from the central HR team.

71. Eydelman asked to keep his phone number, to which Solano responded that the company would allow Eydelman to port his phone number.

72. With that, Defendants terminated the phone call and terminated Eydelman.

73. Subsequently, Defendants refused to allow Eydelman to port his phone number.

74. Defendant's termination of Plaintiff worsened his emotional and mental distress.

75. Plaintiff was the main financial provider for his wife and two children.

76. Because of his termination, however, Plaintiff has been unable to meet his financial obligations.

77. Defendants' actions were so intolerable that they resulted in Eydelman suffering significant emotional distress injuries and/or the physical manifestation of an emotional injury in that he had to take action to seek medical treatment.

78. After Eydelman's termination, his job functions survived and were performed by and/or allocated to another employee and/or employees.

79. At the time of his termination, Plaintiff was earning an annual salary of $131,300. Further, plaintiff received an annual bonus of $19,500, medical benefits, 401k, subsidized child care, paid vacations, paid holidays, and unlimited sick days.

80. These benefits of employment make up plaintiff's claim for damages.

## FIRST COUNT
### (The Americans with Disabilities Act of 1990 ("ADA")
### United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
### codified at 42U.S.C. § 12101 *et seq.)*
### (Disability Discrimination)

81. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

82. The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by discriminating against Plaintiff because of Plaintiff's disability.

83. Plaintiff suffered from a disability and/or was perceived as being disabled.

84. Defendants' actions constitute disability discrimination/harassment in violation of the ADA.

85. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

86. Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

11

## SECOND COUNT
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Failure to Accommodate)**

87. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

88. Plaintiff advised Defendants of his disability/medical condition and requested reasonable accommodations.

89. Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

90. Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work.

91. The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

92. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

93. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## THIRD COUNT
### (ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26) codified at 42U.S.C. § 12101 *et seq.*)
### (Failure to Engage in the Interactive Dialogue)

94. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

95. Plaintiff advised Defendants of his disability/medical condition and requested reasonable accommodations.

96. Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

97. Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work and failed to respond to Plaintiff's request for accommodations.

98. The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

99. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

100. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**FOURTH COUNT**
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Retaliation)**

101. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

102. The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by engaging in acts of reprisal and/or retaliation because Plaintiff asserted his rights under the ADA and/or complained of disability discrimination/harassment and/or retaliation.

103. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

104. Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**FIFTH COUNT**
**(Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*)**
**(Interference)**

105. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

106. The foregoing facts and circumstances demonstrate that Defendants have illegally interfered with plaintiff's rights under the FMLA.

14

107. Defendants are subject to the FMLA.

108. Defendants have in excess of 50 employees.

109. FMLA specifically prohibits employers from discharging, threatening to discharge or discriminating against employees, in terms and conditions of employment for exercising or attempting to exercise their right to use medical leave available to them.

110. Plaintiff provided sufficient notice as soon as feasible to make the Defendants aware of his need for FMLA-qualifying leave.

111. Defendants interfered with the exercise and participation of Plaintiff's rights under FMLA by failing to explain to Plaintiff his FMLA rights once he requested leave.

112. Defendants also interfered with the exercise and participation of Plaintiff's rights under FMLA by imposing discharge, discipline, or taking other negative actions against him. Defendants terminated Plaintiff in a manner that Defendants believed would deprive him of his FMLA rights and would interfere with his ability to take future FMLA medical leaves.

113. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, and/or aggravation of a previously existing mental or emotional and physical condition.

114. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

115. Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## SIXTH COUNT
### (Family and Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.*)
### (Retaliation)

116. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

117. The foregoing facts and circumstances demonstrate that Defendants have illegally retaliated against plaintiff for exercising his rights under the FMLA.

118. FMLA specifically prohibits employers from discharging, threatening to discharge or discriminating against employees, in terms and conditions of employment for exercising or attempting to exercise their right to use medical leave available to them.

119. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, and/or aggravation of a previously existing mental or emotional and physical condition.

120. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

121. Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## SEVENTH COUNT
### (New York State and New York City Human Rights Law and Civil Rights Law)
### (Disability Discrimination/Harassment)

122. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

16

123. The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and harassing Plaintiff due to his medical condition/disability/handicap.

124. As a direct and proximate result of Defendants actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

125. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### EIGHTH COUNT
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Retaliation)**

126. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

127. The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment.

128. As a direct and proximate result of Defendants actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional

distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.   Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.   Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.   Plaintiff's damages have been experienced in the past, and they will continue into the future.

129. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment on these Counts against the Defendants jointly and severally, as follows:

      A.     Compensatory damages of not less than $1,000,000;

      B.     Damages for lost wages and benefits, back pay, front pay (or reinstatement);

      C.     Damages for humiliation, mental and emotional distress;

      D.     Punitive damages where permitted by law;

      E.     Attorneys' fees and costs of suit;

      F.     Lawful interest – including pre-judgment interest on lost wages; and

      G.     Such other, further and different relief as the Court deems fitting, just and

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable

## DESIGNATION OF TRIAL COUNSEL

TY HYDERALLY, ESQ. is hereby designated as trial counsel on behalf of plaintiff.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff, Lazar Eydelman*

By: _____

_____
**Ty Hyderally, Esq.**
**For the Firm**

**Dated: March 15, 2018**

19

EXHIBIT "1"



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: CBRE GWS LLC, CBRE, INC. (Johnson Controls)
EEOC Charge No.: 520-2018-00953
FEPA Charge No.:

December 19, 2017

Ty Hyderally, Esq.
Hyderally & Associates
33 Plymouth Street, Suite 202
Montclair, NJ 07042

Dear Attorney Hyderally:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

| | |
|---|---|
| [ ] | Title VII of the Civil Rights Act of 1964 (Title VII) |
| [ ] | The Age Discrimination in Employment Act (ADEA) |
| [X] | The Americans with Disabilities Act (ADA) |
| [ ] | The Equal Pay Act (EPA) |
| [ ] | The Genetic Information Nondiscrimination Act (GINA) |

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to New York State Division Of Human Rights Federal Contract Unit One Fordham Plaza, 4 Fl. Bronx, NY 10458 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While the charge is pending, this office should be notified of any change in your client's address, or where they can be reached if they have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Róxanne Zygmund
Investigator
(212) 336-3665

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s):          cc: Lazar Eydelman
                       5955 47th Avenue
                       Apt. 7-B
                       Woodside, NY 11377

# HYDERALLY
## & ASSOCIATES P.C.

Ty Hyderally, Esq. <sup>NJ NYN NYE</sup>

Francine Foner, Esq.<sup>NJ</sup>
Jennifer Vorih, Esq.<sup>NJ CA</sup>
Isaac Graff, Esq. <sup>NJ NY NYN NYE</sup>

33 PLYMOUTH STREET
SUITE 202
MONTCLAIR, NJ 07042
℗ (973) 509-8500
℻ (973) 509-8501

NEW YORK ADDRESS
6218 RIVERDALE AVENUE
RIVERDALE, NY 10471
· (718) 601-1100
℻ (212) 601-1200

MEMBER OF NEW JERSEY BAR <sup>NJ</sup>
MEMBER OF NEW YORK BAR <sup>NY</sup>
MEMBER OF CALIFORNIA BAR <sup>CA</sup>
MEMBER OF NEW YORK
SOUTHERN DISTRICT BAR <sup>NYS</sup>
MEMBER OF NEW YORK
EASTERN DISTRICT BAR <sup>NYE</sup>

REPLY TO MONTCLAIR

OF COUNSEL
Edward F. Westfield, Esq.<sup>NY</sup>

Writer's Ext. 201
tvh@employmentlit.com

**VIA CERTIFIED MAIL, RRR**
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

Re:   **Lazar Eydelman v. Johnson Controls**, *et al.*
      **Our File No.: 3241**

Dear Sir or Madam:

Please be advised that we have been retained to represent the claimant, Lazar Eydelman, in the above-referenced matter.  Enclosed please find a completed EEOC intake questionnaire which Mr. Eydelman has signed. Please advise if there is anything further that you require.

Thank you for your courtesies in this matter and we look forward to hearing from you.

Respectfully Submitted,
HYDERALLY & ASSOCIATES, P.C.

TY HYDERALLY, ESQ.
*for the Firm*

TH/ff
Encls.
cc:   Lazar Eydelman (via email, w/ copy of encls.)

T:\Law Offices of Ty Hyderally\Eydelman Lazar\Correspondence\112017.EEOC.doc



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

### 1.   Personal Information

Last Name: Eydelman     First Name: Lazar     MI:

Street or Mailing Address: 5955 47th Avenue     Apt Or Unit #: 7B

City: Woodside     County: Queens     State: NY     ZIP: 11377

Phone Numbers: Home: ( 718 ) 898-1310     Work: (     ) not applicable

Cell: ( 347 ) 813-5643     Email Address: leydelma@yahoo.com

Date of Birth: 01/21/1977     Sex: Male ☒  Female ☐     Do You Have a Disability? ☒ Yes ☐ No

Please answer each of the next three questions.     i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply.     ☐ American Indian or Alaska Native     ☐ Asian     ☐ White

☐ Black or African American     ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Ukranian/Jewish

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Ty Hyderally, Esq., Hyderally & Associates, P.C.     Relationship: Attorney

Address: 33 Plymouth Street, Suite 202     City: Montclair     State: NJ   Zip Code: 07042

Home Phone: (     )     Other Phone: ( 973 ) 509-8500

### 2. I believe that I was discriminated against by the following organization(s): (Check those that apply)

☒ Employer     ☐ Union     ☐ Employment Agency     ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☒ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: CBRE GWS LLC, CBRE, INC (formerly Johnson Controls, Inc.)worked at home and at employer's location

Address: 200 Park Ave., 18th Fl., NY, NY 10166     County: New York

City: Manhattan     State: NY   Zip: 10016     Phone: ( 212 ) 984-8000

Type of Business: facilities management     Job Location if different from Org. Address: Bellevue Hosp, 462 1st Ave, NY, NY

Human Resources Director or Owner Name: Quentin Marvin/Renee Solano, HR Managers     Phone: 224-229-9298

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15     ☐ 15 - 100     ☐ 101 - 200     ☐ 201 - 500     ☒ More than 500

### 3. Your Employment Data (Complete as many items as you can)     Are you a Federal Employee? ☐ Yes ☒ No

Date Hired: June 2012     Job Title At Hire: Senior Finance Manager

Pay Rate When Hired: $125,000/yr     Last or Current Pay Rate: $131,300 + bonus $19,500

Job Title at Time of Alleged Discrimination: Senior Finance Manager     Date Quit/Discharged: 7/19/17

Name and Title of Immediate Supervisor: Gary Paek, Regional Finance Director

2

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

**4.  What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☐ Sex   ☐ Age   ☒ Disability   ☐ National Origin   ☐ Religion   ☒ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A)  Date: _____  Action: SEE ATTACHED _____

Name and Title of Person(s) Responsible: _____

B)  Date: _____  Action: SEE ATTACHED _____

Name and Title of Person(s) Responsible: _____

**6.  Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
SEE ATTACHED

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
SEE ATTACHED

**8. Describe who was in the same or similar situation as you and how they were treated.**  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**                3

| A.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

| B.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

| B.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

**Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.**

9.  Please check all that apply:

  [X]  Yes, I have a disability

  [ ]  I do not have a disability now but I did have one

  [ ]  No disability but the organization treats me as if I am disabled

**10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).**

SEE ATTACHED (which describes physical disability and emotional/mental disability)

**11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

  Yes [X]   No [ ]

If "Yes," what medication, medical equipment or other assistance do you use?

Atenolol, Clonazepam, Escitalopram (generic for Lexapro), aspirin

**12.  Did you ask your employer for any changes or assistance to do your job because of your disability?**

  Yes [X]   No [ ]

If "YES", when did you ask?  SEE ATTACHED          How did you ask (verbally or in writing)?  BOTH. SEE ATTACHED

Who did you ask?  (Provide full name and job title of person)

SEE ATTACHED

Describe the changes or assistance that you asked for:

SEE ATTACHED

How did your employer respond to your request?

SEE ATTACHED

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

14. Have you filed a charge previously in this matter with EEOC or another agency?     Yes ☐     No ☐

15. If you have filed a complaint with another agency, provide name of agency and date of filing:

16. Have you sought help about this situation from a union, an attorney, or any other source?     Yes ☒     No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

*Ty Hyderally, Esq., Hyderally & Associates, P.C.*
*33 Plymouth Street, Suite 202, Montclair, NJ 07042  (973)509-8500*
*Email: Tyh@employmentlit.com*

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency, you should check Box 2.
1. If you want to file a charge, you should check Box 2.

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____                    _11/10/17_
Signature                                   Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.
Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

Print Form

EXHIBIT "2"

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

To:  **Lazar Eydelman**
     **5955 47th Avenue**
     **Apt. 7-B**
     **Woodside, NY 11377**

From:  **New York District Office**
       **33 Whitehall Street**
       **5th Floor**
       **New York, NY 10004**

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-00953 | Roxanne Zygmund, Investigator | (212) 336-3764 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin J. Berry*

**Kevin J. Berry,**
**District Director**

DEC 22 2017

*(Date Mailed)*

Enclosures(s)

cc:  **CBRE GWS LLC, CBRE, INC.**
     **Attn: Quentin Marvin**
     **200 Park Avenue, 18th Floor**
     **New York,, NY 10016**

     **Ty Hyderally, Esq.**
     **Hyderally & Associates, P.C.**
     **33 Plymouth Street, Suite 202**
     **Montclair, NJ 07042**

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u>** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*